UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                                        CASE NO: 2:11-cr-108-FtM-29SPC

MICHAEL JAMES HARRELL,
MATTHEW ROLLINS,
MAURICE ANDRE COLBERT, and
VICTOR DONGREL WILSON.
_____

## REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT

This matter comes before the Court on Maurice Colbert's Motion to Suppress Wiretap Evidence (Doc. #98) filed on July 8, 2012. The Government's Response to Maurice Colbert's Motion to Suppress Wiretap Evidence (Doc. #109) was filed on July 26, 2012. Defendants Michael James Harrell, Matthew Rollins, and Victor Dongrel Wilson, all moved to adopt Colbert's Motion to Suppress Wiretap Evidence (Docs. #111, 115, 116) filed on August 2, 2012 and August 7, 2012. The Motions to Adopt were granted under separate Order (Doc. #120) as the Defendants made a sufficient preliminary showing of standing to challenge the wiretap.[1]

---

[1] The Government argues in its Response Brief to the Motion to Suppress that Defendant Colbert has standing to move to suppress those wire or electronic communications to which he was a party, but that he does not have standing to challenge intercepted wire or electronic communications to which he was not a party. (Doc. #109, p. 4). In order to contest an order permitting the interception of communications, a defendant must establish that he was an "aggrieved person." 18 U.S.C. § 2518(10)(a). Such a person is defined in the relevant statute as a "person who was a party to an intercepted ... communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). The statute further allows that an "aggrieved person" may "move to suppress the contents of any ... communication intercepted pursuant to this chapter." 18 U.S.C. § 2518(10)(a). "[U]nder 18 U.S.C. §2510(11) an 'aggrieved person' is one who participated in the intercepted conversations or on whose premises the conversation occurred." United States v. Scasino, 513 F.2d 47, 50 (5th Cir. 1975). Because it was conceded by the Government at the hearing that Colbert was a party to at least some of the conversations which were intercepted after the Government had obtained the Order Authorizing the Interception of Wire and Electronic Communications, the Court recommends that Colbert has standing to challenge the Government's need to obtain the wiretap order that is the subject of this Motion. The Court is making no recommendation at this time as to whether certain specific conversations that might be offered against Colbert, or against any other Defendant for that matter, in the future for any purposes would be admissible.

Defendant Colbert was present and represented by counsel Allen S. Kaufman. Defendant Harrell was present and represented by counsel Thomas H. Ostrander. Defendant Rollins was present and represented by counsel Mark Youngblood. Defendant Wilson was present and represented by counsel Roy W. Foxall. The Government was represented by Assistant United States Attorney Jeffrey Michelland and Chief Assistant United States Attorney Nicole Waid.

The Court held a hearing on the Motions on August 8, 2012. Although a hearing was held, the Court did not take evidentiary testimony as it was conceded by all Parties that an evidentiary hearing was not required.[2] The Court heard argument from counsel for all parties and received exhibits into evidence from both the Government and Defendant Colbert.

## BACKGROUND

In furtherance of the investigation into armed bank robberies that occurred in August 2011, federal authorities applied for a wiretap. On September 30, 2012, based upon the Affidavit in Support of Application for the Authorization to Intercept Wire and Electronic Communications signed by Special Agent James M. Roncinske of the Federal Bureau of Investigation (Govt. Ex. 1, Attachment B), the Honorable Virginia M. Hernandez Covington signed an Order Authorizing the Interception of Wire and Electronic Communications. (Govt. Ex. 2). The Order authorized the interception of wire communications regarding cellular telephone number (619) 572-9709 (hereinafter referred to as "Target Telephone"), a phone

---

[2] All Defendants asserted at the hearing before the undersigned that they were not arguing that the affiant in this case, Special Agent James Roncinske, made any false statements or omissions in the Affidavit. Defendants are only arguing that the Government's Affidavit in support of the wiretap did not meet the "necessity" requirement of 18 U.S.C. § 2518(1)(c), as other investigative techniques were in place and working well. "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks v. Delaware, 438 U.S. 154, 155-56 (1978). The Eleventh Circuit applies the Franks analysis when evaluating an affidavit offered in support of a wiretap order. United States v. Novaton, 271 F.3d 968, 986 (11th Cir. 2001). Based upon Defendants' representations, the Court recommends that a Franks hearing was not required.

believed to be used by Defendant Harrell.  The wiretap went up on October 1, 2012.  Wire and electronic communications were obtained during the authorized period.  The communications included conversations between all of the Defendants in this case.

An Indictment was returned on October 13, 2011. (Doc. #10).  On December 7, 2011, the Grand Jury returned a Superseding Indictment against the Defendants, charging Count One, conspiracy to commit or to defraud the United States under Title 18, United States Code, Section 371 against all four Defendants; Count Two, conspiracy to carry/possess a firearm during or in furtherance of a crime of violence under Title 18, United States Code, Section 924(o) against all four Defendants; Count Three, bank robbery of the Wells Fargo Bank on August 12, 2011, against Defendants Harrell and Rollins; Count Four, possession of a firearm during the Wells Fargo Bank robbery against Defendants Harrell and Rollins; Count Five, bank robbery of Preferred Community Bank on August 31, 2011 against Defendant Harrell; Count Six, possession of a firearm during the Preferred Community Bank robbery against Defendant Harrell; Count Seven, attempted bank robbery on the Wells Fargo Bank on September 14, 2011, against Defendants Harrell, Rollins, and Colbert; Count Eight, attempted bank robbery on the Capital Bank on October 4, 2011, against all four Defendants; and Count Nine, attempted bank robbery on the Fifth Third Bank on October 7, 2011, against Defendants Harrell, Colbert, and Wilson.  (Superseding Indictment, Doc. #51).

## DISCUSSION

Defendants move to suppress the information obtained by law enforcement as a result of the Title III wiretap on the grounds that other investigative procedures were in place and working well and would reasonably appear to succeed if continued.  They maintain that the court orders permitting the use of wire and electronic interceptions should not have been issued as the

Government failed to meet its burden of showing "necessity" in the affidavits as set forth in 18 U.S.C. § 2518(1)(c).

Pursuant to 18 U.S.C. § 2518(1)(c), an application for an order authorizing the interception of wire communications must include:

> A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

"The necessity requirement is designed to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed." United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986). "The affidavit in support of a search warrant must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves. However, a comprehensive exhausting of all possible investigative techniques is not necessary before applying for a wiretap." United States v. De La Cruz Suarez, 601 F.3d 1202, 1214 (11th Cir. 2010) (quotation marks and citations omitted). Wiretap affidavits are evaluated in a "common sense fashion," and "the determination of when the Government has satisfied [the statutory] requirement must be made against flexible standards, and ... each case must be examined on its own facts." United States v. Hyde, 574 F.2d 856, 867 (5th Cir. 1978). "The 'necessity' requirement in § 2518 ensures that law enforcement does not use electronic surveillance when less intrusive methods will suffice." United States v. Perez, 661 F.3d 568, 581 (11th Cir. 2011) (citing United States v. Kahn, 415 U.S. 143, 153 n.12, 94 S.Ct. 977, 983, n.12, 39 L.Ed.2d 225 (1974) (stating that § 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.")). "Section 2518 does not 'foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted,' United States v. Alonso, 740 F.2d

4

862, 868 (11th Cir. 1984) (quoting United States v. Hyde, 574 F.2d 856, 867 (5th Cir. 1978)); however, it does require the Government to show why alternative measures are inadequate for 'this particular investigation.'" Id. (quoting United States v. Carrazana, 921 F.2d 1557, 1565 (11th Cir. 1991)); United States v. Ippolito, 774 F.2d 1482, 1486 (9th Cir. 1985).

Paragraph 10 of the Government's Application (Govt. Ex. 1) provided as follows:

10. In addition, the attached Affidavit, which is incorporated herein by reference, contains a full and complete statement explaining why normal investigative procedures have been employed in pursuit of the ultimate goals of the investigation and have failed, reasonably appear unlikely to succeed if tried, or are too dangerous to employ.

In the wiretap warrant Affidavit, Spec. Agt. Roncinske listed in the "alternative investigative methods" section (Govt. Ex. 1, Attachment B, ¶¶ 80-106) all of the investigative procedures which were either tried with limited success or which were not tried because they reasonably appeared unlikely to succeed if tried or were too dangerous to employ. Paragraph 80 states that certain investigative procedures had been limited in success, or did not try certain procedures because they reasonably appeared unlikely to succeed if tried, or are too dangerous to employ. These procedures included physical surveillance, mobile tracking devices, video surveillance from pole cameras, search warrants, grand jury subpoenas and interviews of subjects or associates, confidential sources and sources of information, undercover agents, pen register, trap and trace, and telephone toll record analysis, and financial investigations. Paragraph 107 of the Affidavit outlined for the Court the serious public safety issues involved in the case.

Defendants argue that other investigative techniques were in place and working well prior to the issuance of the wiretap, such that the wiretap was not necessary. Specifically, Defendants argue that physical surveillance was being conducted by law enforcement on the Defendants extensively, observing all movement made by the Defendants with no difficulty. Further,

Defendant points out that a tactical team was set up inside and outside of Wells Fargo Bank on Bonita Beach Road, when they observed Harrell casing the bank for a future bank robbery. In addition, a GPS tracking device was placed on Harrell's vehicle to track Defendant's location. There was also a pen register and trap and trace records for the Target Telephone, which linked one member of the alleged conspiracy to other members. Agents also accessed the Facebook account of Colbert and other Co-Defendants to gather information which proved beneficial to the investigation. Further, during the course of the investigation, agents utilized cell phone tower location technology to determine the location of the Defendants and Co-Defendants phones at the time of the charged robberies and attempted robberies. In all, Defendants argue that most of these activities alone were sufficient to permit the Government to charge the Defendants with bank robbery and therefore the wiretap was not necessary. Defendants further argue that search warrants for the Defendants' vehicle, cell phones, and local residences could have easily been sought and utilized. Defendants argue that even without the wiretap conversations, the proffer of evidence of the crimes set forth in the affidavits were sufficient to establish probable cause to issue warrants for the arrest of the Defendants.

"The partial success of alternative investigative measures, however, does not necessarily render electronic surveillance unnecessary." Perez, 661 F.3d 581-82 (citing United States v. Fernandez, 388 F.3d 1199, 1236-37 (9th Cir. 2004) (concluding that the Government met the "necessity" requirement despite "two confidential informants ... [who] were able to provide significant information"). "Indeed, we have held that district courts did not err under similar circumstances." Id. (citing United States v. De La Cruz Suarez, 601 F.3d 1202, 1214 n.7 (11th Cir. 2010) (finding that the "necessity" requirement was met despite the Government's use of confidential informants and consensual monitoring)). It "is unrealistic to require the termination

of an investigation before the entire scope of the [conspiracy] is uncovered and the identity of its participants learned." Perez, 661 F.3d at 582.

The Court recommends that the Application for the wiretap order, including Special Agent Roncinske's Affidavit, demonstrated the need for electronic surveillance. Even though the Government conceded at the hearing that there were investigatory techniques being employed which were successful, Special Agent Roncinske's Affidavit recounted numerous ways in which the Government's investigatory techniques that the Defendants tout in the Motion failed to reveal important information and evidence. The wiretap application described in detail how multiple conventional investigative techniques had either been used or would be unhelpful in the future. Specifically, Special Agent Roncinske's Affidavit stated with regard to the execution of search warrants that "executing search warrants would alert the principals of the existence of the investigation and compromise law enforcement's ability to successfully obtain evidence and prosecute everyone involved in the conspiracy." (Govt. Ex. 1, Attachment B, ¶ 90). With regard to physical surveillance of the suspects, Special Agent Roncinske explained in his Affidavit that it was of limited value because it would not "permit law enforcement to thwart a robbery or prevent victims' lives from being endangered." (Govt. Ex. 1, Attachment B, ¶ 81). Special Agent Roncinske explained in the Affidavit the shortcomings of the mobile tracking devices, including GPS tracking devices installed on vehicles as well as GPS tracking of cellular telephones, including that it could not predict which bank would be robbed next and it was likely that law enforcement would arrive too late after a bank robbery. (Govt. Ex. 1, Attachment B, ¶ 85). Further, Special Agent Roncinske explained that pen register, trap and trace, and toll record analysis did not identify the purpose of telephone calls or text messages, they did not reveal the parties to the communications, nor did they reveal the content of any conversations or messages.

And the information did not necessarily reveal the true identity of the subscribers to the numbers in contact with the Target Telephone. (Govt. Ex. 1, Attachment B, ¶¶ 100, 103). He also noted that geographic cellular tower site information would not show which was the next target bank and its probative value is enhanced only in conjunction with other evidence. (Govt. Ex. 1, Attachment B, ¶¶ 104-105). And social networking media could only provide background information on certain named individuals and assist in confirming users of particular cellular telephone numbers. (Govt. Ex. 1, Attachment B, ¶¶ 72-74). Finally, Special Agent Roncinske outlined the public safety risk in his Affidavit, noting that during one of the bank robberies the subject was armed with an assault rifle and struck a customer with the butt of the rifle. (Govt. Ex. 1, Attachment B, ¶ 107). Special Agent Roncinske believed that the possibility of someone being injured in a future bank robbery was greater than in most bank robberies he had investigated. (Govt. Ex. 1, Attachment B, ¶ 107).

Based upon a review of the Affidavit, the Honorable Virginia M. Hernandez Covington signed the Order Authorizing the Interception of Wire and Electronic Communications. Paragraph 5 of Judge Covington's Order noted that the Government "ha[d] [ ] adequately established that normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried or are too dangerous to employ." (Govt. Ex. 2).

The Court recommends that upon review of the record in this case, Special Agent Roncinske's Affidavit explained why the number of investigative techniques which were being employed were not sufficient and why a wiretap was necessary in this case. Because the Government has demonstrated that the use of non-wiretap investigatory techniques were

sufficiently exhausted, the allowance of the use of wiretaps was proper and necessary and therefore it is recommended that the motion to suppress the wiretap evidence be denied.[3]

Accordingly, it is now

**RECOMMENDED:**

(1) Maurice Colbert's Motion to Suppress Wiretap Evidence (Doc. #98) be **DENIED**.

(2) Maurice Colbert's Motion to Suppress Wiretap Evidence (Doc. #98) as adopted by Michael James Harrell be **DENIED**.

(3) Maurice Colbert's Motion to Suppress Wiretap Evidence (Doc. #98) as adopted by Matthew Rollins be **DENIED**.

(4) Maurice Colbert's Motion to Suppress Wiretap Evidence (Doc. #98) as adopted by Victor Dongrel Wilson be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 14th day of August, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All parties of record

---

[3] The undersigned found under separate Order (Doc. #120) that Defendants Harrell, Rollins, and Wilson, who moved to join the Motion to Suppress Wiretap Evidence, had standing to do so. Therefore, these Defendants may file written objections to these proposed findings and recommendations within 14 days as well.