UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL JAMES HARRELL,

      Petitioner,

v.                           Case No:  2:16-cv-284-FtM-29MRM
                                     Case No. 2:11-CR-108-FTM-29CM

UNITED STATES OF AMERICA,

      Respondent.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #331)[1] and Memorandum of Law to Support (Cv. Doc. #2; Cr. Doc. #332) filed on April 19, 2016. The government filed a Response in Opposition to Motion (Cv. Doc. #8) on June 17, 2016. The petitioner filed a Reply (Cv. Doc. #10) on July 11, 2016.

Also before the Court is petitioner's Motion to Grant Harrell Relief in Light of Dimaya v Session (Cv. Doc. #19), filed on August 13, 2018. The government's Response in Opposition (Cv. Doc. #20) was filed on October 26, 2018.

---

[1]The Court will refer to the docket of the civil habeas case as "Cv. Doc.", and will refer to the docket of the underlying criminal case as "Cr. Doc."

Between March 12, 2019, and October 1, 2019 the case was stayed at petitioner's request (Cv. Docs. #27, #29) awaiting the decision in a case then pending before the United States Supreme Court. After the case was decided, petitioner was allowed to file a supplemental memorandum addressing its impact. On November 20, 2019, petitioner filed two identical documents which were each designated as a Reply (Cv. Docs. #35, #36).

## I.

On September 19, 2012, a federal grand jury in Fort Myers, Florida returned an eleven-count Second Superseding Indictment (Cr. Doc. #139) against Michael James Harrell (petitioner or Harrell) and two other defendants. The charges against petitioner were: conspiracy between June 6 and October 7, 2011, to commit armed robbery of banks and a credit union (Count One); conspiracy between the same dates to use and carry a firearm during and in relation to, and possess a firearm in furtherance of, bank robbery (Count Two); armed robbery of a credit union on June 6, 2011 (Count Three); using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a credit union robbery on June 6, 2011 (Count Four); armed bank robbery on August 12, 2011 (Count Five); using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a bank robbery on August 12, 2011 (Count Six); armed bank robbery on August 31, 2011 (Count Seven); using and carrying a firearm during

and in relation to, and possessing a firearm in furtherance of, a bank robbery on August 31, 2011 (Count Eight); attempted bank robbery on September 14, 2011 (Count Nine); attempted bank robbery on October 4, 2011 (Count Ten); and attempted bank robbery on October 7, 2011 (Count Eleven).

A jury trial for all three defendants began on January 8, 2013. (Cr. Doc. #193.) On February 1, 2013, the jury returned guilty verdicts on all counts against petitioner, although on Counts Four, Six, and Eight petitioner was convicted only of carrying and possessing a firearm, but not using a firearm. (Cr. Doc. #217.)

On May 13, 2013, the Court sentenced petitioner to concurrent terms of 60 months imprisonment as to Counts One, Two, Three, Five, Seven, Nine, Ten, and Eleven; 84 months imprisonment as to Count Four, to be served consecutively to the 60 month terms; 300 months imprisonment as to Count Six, to be served consecutively to the term in Count Four; and 300 months imprisonment as to Count Eight, to be served consecutive to the Count Six, for a total of 744 months of imprisonment, followed by terms of supervised release. Judgment (Cr. Doc. #254) was filed on May 14, 2013.

Petitioner appealed the judgment and conviction, presenting only one argument - that the district court abused its discretion by denying a motion for a mistrial. (Cr. Doc. #328, p. 2.) On December 18, 2015, the Eleventh Circuit affirmed the convictions.

See <u>United States v. Harrell</u>, 635 F. App'x 682 (11th Cir. 2015).
Petitioner did not seek a Writ of Certiorari from the United States
Supreme Court.

The United States concedes that petitioner's § 2255 motion is
timely (Cv. Doc. #8, p. 13), and the Court agrees.

**II.**

The Court begins with petitioner's claims of ineffective
assistance of counsel. Petitioner argues that his trial attorney
provided ineffective assistance by failing to raise various
objections during trial, and that his appellate counsel provided
ineffective assistance by failing to raise certain issues on direct
appeal.

**A. Ineffective Assistance of Trial Counsel Legal Standard**

The legal standard for ineffective assistance of counsel
claims in a habeas proceeding is well established. To prevail on
a claim of ineffective assistance of counsel, a habeas petitioner
must demonstrate both that (1) counsel's performance was deficient
because it fell below an objective standard of reasonableness and
(2) prejudice resulted because there is a reasonable probability
that, but for the deficient performance, the result of the
proceeding would have been different. See <u>Hinton v. Alabama</u>, 571
U.S. 263, 272-73 (2014) (citing <u>Strickland v. Washington</u>, 466 U.S.
668, 687, 694 (1984) and <u>Padilla v. Kentucky</u>, 559 U.S. 356, 366
(2010)). "Because a petitioner's failure to show either deficient

performance or prejudice is fatal to a Strickland claim, a court need not address both Strickland prongs if the petitioner fails to satisfy either of them." Kokal v. Sec'y, Dep't of Corr., 623 F.3d 1331, 1344 (11th Cir. 2010) (citations omitted).

The proper measure of attorney performance is "simply reasonableness under prevailing professional norms" considering all the circumstances. Hinton, 571 U.S. at 273 (internal quotations and citations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (stating courts must look to the facts at the time of counsel's conduct). This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689-90.

To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. See Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); see also Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010). Additionally, an attorney is not ineffective for failing to raise or preserve a meritless issue. See United States v. Winfield, 960 F.2d 970, 974

(11th Cir. 1992); see also Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989).

## B. Ineffective Assistance of Trial Counsel Arguments

Petitioner presents seven claims asserting that his trial attorney provided constitutionally ineffective assistance by failing to object during certain portions of the trial. The Court discusses each claim in turn, and finds neither deficient performance by counsel nor prejudice to petitioner.

### (1) Lack of Rule 404(b) Notice

During trial, the government introduced testimony from Lakisha Rice, Vincent D'Amore, and Brian Grabecki regarding an attempted armed robbery at Florida Gulf Bank on September 2, 2011. Petitioner asserts that given the date of this attempted bank robbery, his attorney should have known that this offense was not part of the charged offense and therefore a notice was required pursuant to Federal Rule of Evidence 404(b). Because no notice was given, petitioner asserts he was deprived of the opportunity to require the government to demonstrate the relevance of the evidence and prejudiced by the lack of an opportunity to prepare for this testimony. Petitioner asserts that there was a high probability that, had notice been given, the Court would have excluded this evidence. Thus, petitioner argues, his trial attorney provided constitutionally ineffective assistance by

failing to raise the lack of notice issue as to this Rule 404(b) evidence. (Cv. Doc. #2, pp. 3-5; Cv. Doc. #10, pp. 1-2.)

The Court accepts and adopts the government's summary of the evidence concerning the Florida Gulf Bank attempted robbery as being a fair and accurate summary of the evidence:

> In 2011, Lakisha Rice worked at a Florida Gulf Coast Bank in Fort Myers. Doc. 297 at 54, 56. She was friends with Harrell, Doc. 297 at 54-55, and, in August 2011, he contacted her and asked for help with a research project about how to start a bank that he supposedly was doing for school, Doc. 297 at 65-66. Rice told him that she could not help him, but he continued to send her text messages asking for help. Doc. 297 at 66; see Gov't Exs. 37-1, 37-2. On September 2, 2011, at about 9:00 a.m., Rice was working with another teller when the other teller noticed that someone was backing up a white truck toward the bank. Doc. 297 at 56; see Gov't Ex. 38A. She yelled, "Oh, my God, ooh, ooh, ooh, it's them," and hit the magnetic lock for the bank's doors. Doc. 297 at 56-57. At the same time, Rice hit the alarm button. Doc. 297 at 57. They heard someone trying to open the door but then saw them speed off in the white truck.Doc. 297 at 56-57. Surveillance cameras outside the bank captured pictures of two men dressed in black trying to get into the bank. Doc. 297 at 58-60; Gov't Ex. 38A. One of the men was carrying a gun. Doc. 297 at 59. A third person was driving the truck. Doc. 297 at 64. Officers found the truck, which had been stolen, about a half mile away. Doc. 297 at 84-85, 93-96, 100; see Gov't Exs. 38C through 38H. A detective later showed Rice a picture of Harrell from the Preferred Community Bank surveillance cameras and asked her if she had ever seen him before. Doc. 297 at 77-78. She recognized Harrell in the photo. Doc. 297 at 79. Cell-phone records showed that Harrell's phone had been in the

> vicinity of the bank around the time of the
> robbery. Doc. 305 at 112–13; Gov't Ex. 111D.

(Cv. Doc. #8, p. 7.)

Under Rule 404(b), evidence of other crimes or prior bad acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with [that] character," but it may be admissible to prove, among other things, the defendant's knowledge, absence of mistake, or lack of accident. Fed. R. Evid. 404(b). Importantly, "Rule 404(b) is a rule 'of inclusion which allows extrinsic evidence unless it tends to prove only criminal propensity.'" <u>United States v. Hano</u>, 922 F.3d 1272, 1291 (11th Cir. 2019) (quoting <u>United States v. Sanders</u>, 668 F.3d 1298, 1314 (11th Cir. 2012)).

Rule 404(b) also provides that upon "request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial— or during trial if the court, for good cause, excuses the lack of pretrial notice." Fed .R. Evid. 404(b)(2). Three factors influence the reasonableness of notice: when the government could have learned of the availability of a witness, the extent of the prejudice from a lack of time to prepare, and the significant of the evidence. <u>United States v. Carswell</u>, 178 F. App'x 1009, 1011 (11th Cir. 2006).

Not all uncharged offenses fall within the scope of Rule 404(b):

> But evidence of criminal activity other than the charged offense is not "extrinsic" under Rule 404(b), and thus falls outside the scope of the Rule, when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." United States v. Baker, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005) (quoting United States v. Veltmann, 6 F.3d 1483, 1498 (11th Cir. 1993)). "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998). And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." United States v. Foster, 889 F.2d 1049, 1053 (11th Cir. 1989). Nonetheless, evidence of criminal activity other than the charged offense, whether inside or outside the scope of Rule 404(b), must still satisfy the requirements of Rule 403. Baker, 432 F.3d at 1219 n.36.

United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007).

The Second Superseding Indictment (Cr. Doc. #139) charged a bank robbery conspiracy "[f]rom a date unknown, but at least by on or about June 6, 2011, and continuing to on or about October 7,

2011". While the attempted robbery at the Florida Gulf Coast Bank in Fort Myers was not identified as an overt act in the conspiracy, or as a substantive count, it occurred on September 2, 2011, a date well within the time frame of the conspiracy. The Second Superseding Indictment identified bank or credit union robberies on June 6, August 12, and August 31, 2011, and attempted bank robberies on September 14, October 4, and October 7, 2011. The September 2, 2011 attempted bank robbery clearly arose out of the same series of transactions as the charged offenses and was necessary to complete the story of the crimes. This evidence was not governed by Rule 404(b), and no notice was required.

While notice was not required under Rule 404(b), petitioner was given reasonable notice of the Florida Gulf Coast Bank attempted robbery early in the proceedings. The Criminal Complaint (Cr. Doc. #3) filed against petitioner on October 7, 2011, contained three paragraphs outlining the facts of the attempted bank robbery at the Florida Gulf Coast Bank. (Id. at ¶¶ 25-27.) At the November 7, 2011, arraignment on the original Indictment and detention hearing, the government proffered this attempted robbery as part of its evidence against petitioner: "We also have geolocation cell site information for the defendant's phone showing that he was in the vicinity of the Florida Gulf Bank located at 8070 Daniels Parkway on September 2nd, 2011, at the time of the attempted bank robbery of that bank." (Cr. Doc. #43,

p. 17.) Even if petitioner's attorney had objected to the testimony regarding this attempted robbery, there is no reasonable probability that the Court would have excluded the testimony.

The Court finds that the failure of petitioner's attorney to object to the evidence concerning the attempted robbery of the Florida Gulf Coast Bank on September 2, 2011, or to the lack of a Rule 404(b) notice as to such evidence, did not constitute deficient performance and did not prejudice petitioner.

**(2) In-Court Identification**

Petitioner asserts that his attorney's failure to object to the in-court identification by Kenneth Dobson, the Chief of the City of Fort Myers Fire Department, or to request an evidentiary hearing prior to the identification, constituted ineffective assistance of counsel. Petitioner argues that his attorney should have objected because the in-court identification violated due process, and should have requested an evidentiary hearing to determine if there was an independent source for the identification. Petitioner also argues that because of the length of time between Chief Dobson's observations (June 6, 2011) and the identification at trial (June 9, 2013), the government cannot prove an independent source for the identification. (Cv. Doc. #2, pp. 5-7; Cv. Doc. #10, pp. 2-3.)

The Court accepts and adopts the government's summary of the evidence concerning the Lee County Postal Credit Union robbery and

the identification by Chief Dobson as being a fair and accurate summary of the evidence:

> On June 6, 2011, Sally Lee and Ann Rairden were working at the Lee County Postal Credit Union when someone came in, dressed in black from head to toe, "like a ninja." Doc. 295 at 60, 101. After jumping over the teller counter, the man grabbed Lee by her shirt, put a gun to her head, and told her to go to the safe and to get money. Doc. 295 at 60-61, 70, 90, 102-03. Lee fell to the ground, but the man dragged her and told her to get the money. Doc. 295 at 61. Lee pulled open a money drawer, and the man pushed Lee to the ground and, pointing the gun at her head, told her to get down or he would kill her. Doc. 295 at 61-62. A second man, who also was carrying a gun, also jumped over the teller counter and took cash from a second teller drawer. Doc. 295 at 62-63, 90, 103. A surveillance video camera captured the robbery. Doc. 295 at 64-65; Gov't Ex. 4; see also Gov't Exs. 5A-5G. Coconspirator Victor Wilson testified at trial that Colbert had told him that Colbert and Kevin Smiley had been the credit-union robbers and that Colbert had used his .357 gun during the robbery. Doc. 303 at 180-83. Colbert, Harrell, and Smiley also had told Wilson that Harrell had driven of the getaway car. Doc. 303 at 184, 187-88.
>
> An eye-witness to the robbers' flight, Kenneth Dobson, identified Harrell as the driver of the getaway vehicle, Doc. 295 at 134-36. Dobson was the fire chief of the City of Fort Myers. Id. at 127. Dobson said he was at the intersection of Jackson and Bay Streets in his vehicle and could see a white SUV approaching. The vehicle passed him at about a distance of 10 feet. Dobson saw one person in the vehicle, the driver, sitting up in the seat, holding the wheel, looking straight ahead. Dobson said the driver was a black male who looked to be bald and somewhat thin by the way he was sitting and the way he was leaning. He might

have had some hair on his chin, like a beard. Dobson remembered clearly the way he was sitting in the vehicle and that the driver's Adam's apple was sticking out in such a way because of the way he was leaning forward. Dobson estimated that the driver was approximately 30 years old. Dobson said that he saw the driver through the windshield approaching, and then through the side as it was driving by. Dobson said that he believed he recognized the driver in the courtroom and identified Harrell as the driver. Defense counsel had no objection to the prosecutor's request that the record reflect the witness had identified Harrell as the person in the SUV that day. Id. at 131-36.

On cross examination, defense counsel asked whether Dobson saw glasses, how many seconds he was able to view the driver, the distance between Dobson and the driver, what the driver was wearing, any hair on the driver's head, the color of his clothes, whether Dobson was positive Harrell was the driver, and how Dobson was able to see the driver through the vehicle. Id. at 138-44. There was no testimony or evidence that Dobson's identification was an unduly suggestive identification. Cellphone records showed that Harrell's phone had been in the vicinity of the bank at the time of the robbery, Doc. 305 at 106-08; see Gov't Ex. 111A.

(Cv. Doc. #8, pp. 3-4.)

The Constitution does not impose a per se rule requiring an evidentiary hearing concerning in-court identification in every case. Watkins v. Sowders, 449 U.S. 341, 349 (1981) ("A judicial determination outside the presence of the jury of the admissibility of identification evidence may often be advisable. In some circumstances, not presented here, such a determination may be

constitutionally necessary. But it does not follow that the Constitution requires a per se rule compelling such a procedure in every case.") "The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." Perry v. New Hampshire, 565 U.S. 228, 245 (2012). In-court identification may be admissible despite prior suggestive conduct.

> [An] in-court identification, even if preceded by a suggestive out-of-court identification procedure, is nevertheless admissible if the in-court identification has an independent source. United States v. Wade, 388 U.S. 218, 241 (1967). Among the indicia of a sufficient, independent basis for identification are the witness's opportunity to observe the defendant at the time of the offense, the witness's degree of attention, the degree of certainty shown at the confrontation, and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

United States v. Cannington, 729 F.2d 702, 711 (11th Cir. 1984).

In this case, there was no suggestion that there was any prior suggestive out-of-court identification procedure concerning the identification of petitioner by Chief Dobson, and therefore no need for a hearing to examine the procedure or look for an independent source. Defense counsel cross-examined Chief Dobson as to his identification, and the U.S. Supreme Court has noted

that "cross-examination has always been considered a most effective way to ascertain truth." Watkins, 449 U.S. at 349. The circumstances of the identification noted by petitioner were for the jury to weigh and determine, and the jury was properly instructed as to the government's burden of proving identification. (Cr. Doc. #212, p. 10.)

The Court finds that the failure of petitioner's attorney to object to the in-court identification by Chief Dobson or to request an evidentiary hearing outside the presence of the jury did not constitute deficient performance and did not prejudice petitioner.

### (3) Lay Opinion Testimony

Petitioner asserts that his attorney was constitutionally ineffective by failing to object to the testimony of Laurie Jerriey as improper lay opinion in violation of Fed. R. Evid. 701. Ms. Jerriey testified that she believed that the bank was "cased," which petitioner asserts was not proper opinion testimony. Petitioner also asserts that Ms. Jerriey's identification of petitioner was only based on the gold teeth of the perpetrator, which was improperly highlighted by government misconduct. (Cv. Doc. #2, p. 8; #10, pp. 3-5.)

The Court accepts and adopts the government's summary of the evidence concerning the Preferred Community Bank robbery and the testimony by Laurie Jerriey as being a fair and accurate summary of the relevant evidence:

At about 10:30 a.m. on August 31, 2011, Diane
Reginek was working at the Preferred Community
Bank when two armed and masked men came into
the bank and told everyone to "get down." Doc.
296 at 223, 234; see Gov't Exs. 29 and 30A
through 30T. One of the men carried two
handguns, and the other carried one. Doc. 296
at 224. Both men pointed their guns at
Reginek's head, and she and a customer got on
the floor. Doc. 296 at 225–26. One robber
jumped over a gate to get behind the teller
line, while the other remained in the lobby.
Doc. 296 at 226. With that robber's gun
pointed at Reginek, she complied with their
commands to open the teller drawers. Doc. 296
at 228–29. One of the robbers also pointed a
gun at the head of another bank employee,
Laurie Jerriey, and told her to open her
teller drawer. Doc. 296 at 234–25. Jerriey
noticed through the man's mask that he had
distinctive gold teeth and a long neck, and
she realized the he was the same man who had
come into the bank two days earlier,
supposedly to inquire about opening a new
account. Doc. 296 at 234–35. After she had
opened her teller drawer, the second robber
pointed his two guns at her and told her to
get down on the floor. Doc. 296 at 235–26,
247–48.

Jerriey later told the police that she
believed that the bank had been cased because
she recognized the robber with the gold teeth
from her encounter with him at the bank two
days earlier. Doc. 296 at 253–54. She showed
them pictures from the surveillance videotape
of the day of her encounter with the customer.
Doc. 296 at 255; Gov't Exs. 32A through 32F.
At trial, she identified Harrell as the person
who had cased the bank, Doc. 296 at 259–60,
and Wilson confirmed that Harrell had gone to
the bank to conduct surveillance, as Jerriey
had suspected, Doc. 297 at 40; Doc. 303 at
210–11. Wilson also testified that Rollins and
Smiley had told him that Rollins had been the
robber who had carried two guns. Doc. 303 at
201.

(Cv. Doc. #8, pp. 8-9.)

"The determination of whether testimony is properly admitted as lay opinion is based upon the nature of the testimony, not whether the witness could be qualified as an expert." <u>United States v. Moran</u>, 778 F.3d 942, 967 (11th Cir. 2015) (citation omitted). Under Rule 701,

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. A lay witness may testify based on her professional experiences "as long as the testimony is rationally based on those experiences, rather than on scientific or technical knowledge." <u>United States v. Williams</u>, 865 F.3d 1328, 1341 (11th Cir. 2017) (internal quotation marks and citations omitted).

Ms. Jerriey testified as to her own perceptions based on her years of banking experience. Ms. Jerriey expressed her personal view to the police that petitioner had been casing the bank based on having seen him in the bank two days before the robbery. None of her testimony was based on scientific, technical, or other specialized knowledge that required her to be qualified as an

expert.  Therefore, Ms. Jerriey's testimony was proper lay opinion testimony, not expert testimony, and there was no basis for an objection by defense counsel.

Additionally, Ms. Jerriey did not identify petitioner simply because of gold teeth.  Ms. Jerriey identified petitioner from the three defendants seated at counsel table because petitioner had the same features and was the same size as the perpetrator.  The weight to be given to this identification was for the jury.  Additionally, there was no government misconduct in asking the Court to confirm for the record that the person the witness had identified was petitioner.

The Court finds that the failure to object to the testimony of Ms. Jerriey as improper lay opinion testimony, to her identification of petitioner, or to the government's request of the Court regarding which person the witness had identified did not constitute deficient performance or prejudice petitioner.

**(4)  Failure to Remove Juror 16**

Petitioner asserts that Juror 16 should have been removed from the jury because the juror knew a witness, and that the failure of his attorney to request a hearing and to argue for removal constituted ineffective assistance of counsel.  Petitioner argues that the juror should have been removed because petitioner is entitled to an impartial jury without a juror biased in favor

of the government.  (Cv. Doc. #2, pp. 9-10; Cv. Doc. #10, pp. 5-
6.)

On the sixth day of trial, Brian David Rambo, a logistics
supervisor for Quest Diagnostics, testified that on October 3 and
4, 2011, he reported to the Fort Myers Police Department that two
Quest Diagnostic white Dodge minivans were broken into. (Cr. Doc.
#299, pp. 129-130.)  During the testimony Juror 16 sent a note to
the Court stating that she may know the government witness on the
stand, or his father.   The Court directed counsel to come to
sidebar and informed counsel that there was a note stating that
juror number 16 may know "this witness or his father."  The Court
asked what counsel wanted to do about the information.   Defense
counsel conferred privately, and then agreed with the government
that the Court should do nothing except thank the juror for the
note.   In open court, the Court stated "Thank you for the note.
Everything's fine.   You may proceed."  (Id., pp. 130-131.)  The
witness did not identify petitioner or the other defendants as
being responsible for the break-ins (id., pp. 128-33), and no
defense attorney asked the witness any questions (id., p. 133).

Petitioner is certainly correct that he has a right to a fair
and impartial jury, and to individual jurors who are not biased in
favor of one side or the other.   "Due process also requires 'a
jury capable and willing to decide the case *solely* on the evidence
before it, and a trial judge ever watchful to prevent prejudicial

occurrences and to determine the effect of such occurrences when they happen.'" <u>United States v. Brown</u>, 17-15470, 2020 WL 97845, at *11 (11th Cir. Jan. 9, 2020) (emphasis in original) (quoting <u>Smith v. Phillips</u>, 455 U.S. 209, 217 (1982)).

A trial court may excuse a juror and replace her with an alternate if the juror becomes, or is found to be, "unable or disqualified" to perform her duties. Fed. R. Crim. P. 24(c). The trial judge may remove and replace a seated juror before deliberations begin whenever "facts arise . . . that cast doubt on [that] juror's ability to perform her duties." <u>United States v. Smith</u>, 918 F.2d 1501, 1512 (11th Cir. 1990).

> The decision to remove a juror and replace him with an alternate is entrusted to the sound discretion of the trial judge "whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired." [ ] The trial court's discretion in removing a juror "is not to be disturbed absent a showing of bias or prejudice to the defendant . . . or to any other party." [ ]

<u>United States v. Fajardo</u>, 787 F.2d 1523, 1525 (11th Cir. 1986)(internal citations omitted). There was no basis to conduct a further inquiry of the juror or to remove her from the jury in this case.

Juror 16 stated that she <u>may</u> know the witness or his father. The witness was testifying about vehicle break-ins at Quest Diagnostics, and did not implicate petitioner (or either other

defendant) in these break-ins. No defense counsel wanted the matter pursued, and none asked this minor witness any questions. Petitioner's speculation about bias has no foundation.

The Court finds that the failure to object to the continued service by Juror 16 and failed to request a hearing concerning Juror 16 did not constitute deficient performance and did not prejudice petitioner.

**(5) Failure to Qualify Expert Witnesses**

Petitioner argues that all expert witnesses testified without being qualified, as required by Fed. R. Evid. 702 and Daubert[1]. Petitioner argues that the trial court failed in its gatekeeping function by allowing witnesses to testify as experts without first finding them to be qualified. Petitioner asserts that his attorney provided ineffective assistance by not arguing that all experts must be qualified under both Rule 702 and Daubert. (Cv. Doc. #2, pp. 10-12; Cv. #10, pp. 6-7.)

Petitioner references only the testimony of Connie Bell, a crime laboratory analyst in the digital evidence section of the Florida Department of Law Enforcement, who testified regarding the contents of petitioner's phone. (Cr. Doc. #302, p. 115.) During a sidebar conference the following conversation took place:

> MR. KAUFMAN: Judge, I might have missed it, because I was talking to my client, but the whole purpose of establishing her

---

[1] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

qualifications was to qualify her as an expert. But I don't know if the -- Mr. Michelland asked the Court to, you know, allow her to be qualified as an expert. I might have missed it, but -- which now she's getting into some expert --

THE COURT: He didn't, but I don't qualify them as an expert. I decide whether she can give an opinion or not, and let the jury decide whether she's an expert. So I don't make a finding that she is.

MR. KAUFMAN: Okay.

THE COURT: And if he moves, or if you object, I'll make a finding that she can state an opinion, but I'm not going to tell the jury that's because I find she is an expert.

MR. KAUFMAN: Okay. All right. I thought that's where we were headed with all of that.

THE COURT: Well, if there's an objection, I mean --

MR. KAUFMAN: No. She's qualified.

(Id., pp. 130-131.) At the conclusion of the trial the jury was instructed: "When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter. But that does not mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion." (Cr. Doc. #212, p. 5.)

Petitioner is certainly correct that the trial judge must perform a critical "gatekeeping" function concerning the

admissibility of expert scientific evidence.  United States v. Barton, 909 F.3d 1323, 1331 (11th Cir. 2018).  It is also clear, however, that the trial court is just a gatekeeper, and that Rule 702 is simply a screening procedure, not an opportunity for the trial judge to substitute its judgment for that of a jury.  Id. at 1332.  "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence."  Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).

The Court performed its gatekeeping function, and stated it would find the witness qualified to give an opinion if petitioner's counsel objected.  Petitioner's counsel agreed that the witness was qualified.  The Court did not characterize the witness as an "expert," but properly instructed the jury as to its consideration of such testimony.  Neither the Court nor the Eleventh Circuit Pattern Criminal Jury Instructions characterize a witness as being an "expert."  Rather, after the Court determines the witness is allowed to state an opinion, it is left to the jury to assess the opinion without being told by the Court that the witness is an "expert."

The Court finds that the failure of defense counsel to object to the trial court not informing the jury that a witness was an "expert" did not constitute deficient performance and did not

prejudice petitioner.  Indeed, the lack of the Court's imprimatur as an "expert" was beneficial to petitioner's case.

**(6)  Failure to Call Alibi Witness**

Although petitioner phrases the issue as "failing to call alibi witness," (Cv. Doc. #2, p. 12), his issue does not relate to an alibi but to impeachment of a government witness, as petitioner clarified in his Response to the Government's Opposition (Cv. Doc. #10, p. 8).  Petitioner states that co-defendant Victor Dongrell Wilson testified as a government witness about a conversation with Kevin Smiley, who told Wilson about other robberies.  While defense counsel unsuccessfully objected to this testimony as hearsay, petitioner argues that counsel had an obligation to call Smiley as a defense witness to impeach Wilson.  The failure to do so, petitioner asserts, constituted ineffective assistance of counsel.  (Cv. Doc. #2, pp. 12-13; Cv. Doc. #10, p. 8.)

Victor Dongrell Wilson, petitioner's cousin, pled guilty to conspiracy to commit armed bank robbery and testified as a government witness pursuant to a cooperation plea agreement.  (Cr. Doc. #303, pp. 159-161.)  As the Eleventh Circuit stated:

> In this case, the district court did not clearly err in admitting Wilson's testimony about what Smiley told him.  As the record shows, Wilson had discussed robbing a bank with Colbert, Smiley, and Harrell before he returned to jail, including the fact that Wilson would steal a getaway vehicle, and Harrell would be the getaway driver.  While Wilson might have originally thought they were

joking about robbing banks, at the time he
called Smiley, he knew it was not a joke.
Wilson told Smiley that he wanted a piece of
the action, and they had previously discussed
bank robbery in detail, including who would
play what role.  After Wilson got out of jail,
he assisted in the conspiracy by stealing
vehicles, and was present during the casing of
banks.   Smiley's statements explained to
Wilson how the robbery depicted on television
had gone, and could have been intended to
affect future dealings between them.   On this
record, it is clear that Wilson and Smiley
were  co-conspirators,  and  that  Smiley's
statements updated Wilson on the conspiracy,
and,  thus,  were  in  furtherance  of  the
conspiracy.

(Cr. Doc. #328, pp. 12-13.)

"Which witnesses, if any, to call, and when to call them, is
the epitome of a strategic decision, and it is one that we will
seldom, if ever, second guess."  Knight v. Florida Dep't of Corr.,
936 F.3d 1322, 1340 (11th Cir. 2019) (quoting Waters v. Thomas, 46
F.3d 1506, 1512 (11th Cir. 1995)) (en banc).  Defense counsel has
no duty to call a witness simply because the witness may be able
to impeach a portion of a government witness's testimony, as the
record in this case highlights.

On July 16, 2013, Kevin Smiley (Smiley) testified as a defense
witness at the sentencing of defendant Maurice Colbert.  Smiley
testified on direct examination that he did not know Wilson well,
and denied making the statements about the robberies attributed to
him by Wilson.  (Cr. Doc. #315, pp. 19-27.)  While this testimony
would have been favorable to petitioner's position at trial, there

is no indication that Smiley would have agreed to testified during the trial, which concluded six months before his testimony.

Even if Smiley would have testified, the record establishes that the impeachment would have inflicted more damage to petitioner's case than help, and that a reasonable attorney would not call Smiley before a jury.

Smiley testified he was convicted of robbery in 2007, the same type of offense for which petitioner and his co-defendants were on trial. Smiley was released from prison on April 14, 2011. (Id., p. 34.) Smiley got his gold teeth in about May 2011, using $2,000 he had received in the robbery of which he had been convicted. (Id., pp. 48-49.) Smiley went back to jail on or about September 8, 2011, on violation of probation charges for a new offense of aggravated assault, which involved shooting into a vehicle. (Id., pp. 34, 36, 51-52.) Petitioner received 90 months imprisonment for the violation of probation, and the aggravated assault charges were still pending. (Id., p. 52.)

While Smiley testified he did not know Wilson well, and was not involved in any bank robberies, his testimony undermined his position. While Smiley testified he only knew of Wilson because he is a cousin of a friend (id., p. 32), he was with Wilson at a gentleman's club and during the shooting into the vehicle incident for which he was arrested, along with Matthew Rollins and Daniel Franks. (id., pp. 55-56). Smiley was also with Wilson at a July

24, 2011 birthday party (id., pp. 58-59), and posed with his arm around Wilson in photograph (id., p. 63), although Smiley testified he was drunk for the picture (id., p. 65). Smiley's cell phone records showed contact information for petitioner, Colbert, and Wilson. (Id., p. 70.) There were multiple text messages from Smiley's phone to and from Wilson, including on September 1, 2011, regarding a favor Smiley had done for Wilson when Wilson was in jail (id., pp. 72-74), and texts about Wilson repaying a favor (id., p. 78). Other texts with petitioner or the co-defendants could reasonably be viewed as referring to bank robberies being committed. (Id., pp. 80-90, 93-100.) The government suggested that surveillance video of a credit union robbery included Smiley, although he denied it. (Id., pp. 44-45.)

Petitioner has failed to establish by a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "[T]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." Chandler v. United States, 218 F.3d 1305, 1316 n.20 (11th Cir. 2000) (en banc) (quotation marks and citation omitted).

The Court finds that the failure of defense counsel to call Smiley as a defense witness at trial did not constitute deficient performance and did not prejudice petitioner.

**(7) Failure to Object to Certain Jury Instructions**

Petitioner argues that his trial attorney failed to object to the lack of a jury instruction concerning fingerprint evidence, a witness's interest in the outcome of the case, and Rule 404(b) evidence. These failures, petitioner asserts, constituted ineffective assistance of counsel. (Cv. Doc. #2, pp. 13-16; Cv. Doc. #10, pp. 9-10.)

**(a) Fingerprint Evidence**

Petitioner argues that a jury instruction regarding reliance on fingerprint evidence should have been given. Witness Trian Maurice testified that she found a plastic bag in the parking lot of the bank after the robbery. Ms. Maurice testified that she could not tell how long the bag was there, and the bag could have been there for months. Petitioner argues that based on this testimony the Court should have given the following Florida law instruction: "When the state relies solely upon fingerprint evidence to establish a defendant's guilt, the evidence must demonstrate that the fingerprints could have been made only when

the crime was committed." (Cv. Doc. #2, pp. 13-14; Cv. Doc. #10, p. 9.)

At trial, Trina Maurice testified that she was employed as a crime scene technician at the Fort Myers Police Department. She was called to investigate a crime scene at the Wells Fargo Bank on Lee Boulevard after a bank robbery on August 12, 2011. (Cr. Doc. #296, pp. 67-68.) After taking pictures, Maurice processed the teller counter. (Id., pp. 69-71.) Outside the bank, Maurice collected a white plastic bag near the front entrance. (Id., p. 71.) Maurice used a black magnetic powder to check for latent prints on the plastic bag, and found fingerprints on the outside of the bag. (Id., pp. 74-75.) Maurice lifted the prints, but they were examined by someone else. (Id., p. 80.)[2] On cross-examination, Maurice testified that she could not tell how long the plastic bag had been sitting in front of the bank, or how long the fingerprint had been on the plastic bag. (Id., pp. 91, 94.)

Petitioner relies on Grissett v. Sec'y, Dep't of Corr., Fla. Atty. Gen., 223 F. App'x 846 (11th Cir. 2007), which states in pertinent part:

> Florida 'law is clear that when the state relies solely upon fingerprint evidence to establish a defendant's guilt, the evidence must demonstrate that the fingerprints could have been made only when the crime was

---

[2] Witness Cindy Renae Sharkey, a senior forensic examiner at the Lee County Sheriff's Office, identified the fingerprints as belonging to petitioner. (Cr. Doc. #296, pp. 128, 145.)

> committed.' <u>Williams v. State</u>, 740 So. 2d 27,
> 28 (Fla. 1st DCA 1999). Thus, if the only
> evidence is fingerprints, and they are 'found
> on an item or in a place accessible to the
> general public . . . the defendant is entitled
> to a judgment of acquittal.'" <u>Id.</u> at 2829 [].

<u>Grissett v. Sec'y, Dept. of Corr., Florida Atty. Gen.</u>, 223 F. App'x 846, 849 (11th Cir. 2007)(citations omitted). This statement of Florida law is of course not controlling in the prosecution of a federal criminal offense. Additionally, the legal principle from the case does not apply because fingerprint evidence was not the "only" evidence of defendant's guilt.

The Court finds that the failure of defense counsel to object to the trial court's failure to give the Florida jury instruction concerning fingerprints did not constitute deficient performance and did not prejudice petitioner.

**(b) Witness's Interest in Outcome**

Petitioner argues that Albert Moore testified as a government witness at trial that he knew petitioner from jail, and that he identified petitioner. Petitioner argues that a cautionary jury instruction should have been given regarding a witness who may benefit from the outcome of the testimony, and that the instruction given by the Court was inadequate. Petitioner argues that failure to request, or object to the absence of, such an adequate instruction was ineffective assistance. (Cv. Doc. #2, pp. 14-23; Cv. Doc. #10, pp. 9-10.)

Albert Michael Moore was housed at the Charlotte County Jail at the time of trial, having entered a plea of guilty to a charge of possession of a firearm by a convicted felon. (Cr. Doc. #299, p. 7.) During his trial testimony, Moore detailed his prior felony convictions. (Id., pp. 8-9.) When he was housed at the Lee County Jail the first time, Moore met co-defendant Matthew Rollins, who eventually told him that he robbed three banks. (Id., pp. 12, 17.) The second time Moore was in the Lee County Jail, he met petitioner, who he said did not wear glasses at the time. Moore confirmed petitioner's identity in the courtroom when he pointed him out as the individual with glasses and a shaved head. (Id., p. 21.)

The jury was instructed as follows:

> You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or did not say or do something, that was different from the testimony the witness gave during this trial.
>
> To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.
>
> . . .
>
> You must consider some witnesses' testimony with more caution than others.
>
> In this case, the Government has made plea agreements with a Codefendant and another person in exchange for their testimony. Such "plea bargaining," as it is called, provides

for the possibility of a lesser sentence than the person would normally face. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

But a witness who hopes to gain more favorable treatment may have a reason to make a false statement in order to strike a good bargain with the Government.

So while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

And the fact that a witness has pleaded guilty to an offense is not evidence of the guilt of any other person.

(Cr. Doc. #212, pp. 6-7.)

While petitioner argues that this instruction did not apply to Moore, he is incorrect. The instruction included that "a witness who hopes to gain more favorable treatment may have a reason to make a false statement in order to strike a good bargain with the Government." The Court gave the substance of the instruction petitioner now contends should have been given. Since the appropriate instruction was given, counsel was not ineffective for failing to request different verbiage.

The Court finds that the failure of defense counsel to object to the trial court's jury instruction or to request an additional jury instruction did not constitute deficient performance and did not prejudice petitioner.

### (c) Rule 404(b) Evidence

Petitioner argues that a jury instruction should have been given regarding evidence of the unrelated attempted robbery that was introduced, and that a curative instruction was necessary for the lack of proper notice pursuant to Rule 404(b). (Cv. Doc. #2, pp. 15-16; Cv. Doc. #10, p. 10.)

As previously stated, the attempted robbery which petitioner asserts was an uncharged Rule 404(b) offense was not subject to Rule 404(b). Accordingly, no Rule 404(b) instruction was appropriate, nor was an instruction regarding the alleged lack of proper notice. The Court finds that the failure of defense counsel to request additional jury instructions regarding Rule 404(b) evidence and lack of notice did not constitute deficient performance and did not prejudice petitioner.

### C. Ineffective Appellate Counsel Legal Standard

The same deficient performance and prejudice standards applied to trial counsel also apply to appellate counsel. See Smith v. Robbins, 528 U.S. 259, 285-86 (2000); see also Roe, 528 U.S. at 476-77. If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal. If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice. See Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997). Counsel is not deficient for failing to

raise non-meritorious claims on direct appeal. <u>See</u> <u>Diaz v. Sec'y</u> <u>for the Dep't of Corr.</u>, 402 F.3d 1136, 1144-45 (11th Cir. 2005).

**D. Ineffective Appellate Counsel Arguments**

On direct appeal, petitioner's counsel raised only one argument: That the district court abused its discretion by denying petitioner's motion for a mistrial. Petitioner argues that appellate counsel should have raised four additional claims on direct appeal detailed below, and that failure to do so constituted ineffective assistance of counsel. (Cv. Doc. #2, pp. 16-22.)

**(1) Sufficiency of Evidence For Counts Nine, Ten, Eleven**

Petitioner argues that the government provided insufficient evidence to convict him of the attempted bank robbery charges in Counts Nine, Ten, and Eleven. Petitioner asserts that the government failed to prove beyond a reasonable doubt that he "did knowingly and willfully attempt to take, by force and violence and by intimidation," an element of the attempted bank robbery offenses. Petitioner also asserts that there was insufficient evidence that a substantial step was taken, as required to constitute an attempted bank robbery. (Cv. Doc. #2, pp. 16-17; Cv. Doc. #10, pp. 10-11.)

Counts Nine, Ten, and Eleven allege attempted bank robbery of three different banks on three different dates in violation of 18 U.S.C. § 2113(a) and § 2. (Cr. Doc. #139, pp. 11-12.) With

regard to these attempted bank robbery counts, the jury was instructed as follows:

> In some cases, it is a crime to attempt to commit an offense –– even if the attempt fails. In this case, the Defendants are charged in Counts Nine, Ten, and Eleven with attempting to commit bank robbery.
>
> . . .
>
> Defendant can be found guilty of bank robbery only if all the following facts are proved beyond a reasonable doubt:
>
> First: That the Defendant knowingly took money or property possessed by a federally insured bank or credit union from or in the presence of another person; and
>
> Second: the Defendant did so by means of force and violence or by means of intimidation.
>
> A Defendant can be found guilty of an attempt to commit that offense only if both of the following facts are proved beyond a reasonable doubt:
>
> First: That the Defendant knowingly intended to commit the crime of bank robbery; and
>
> Second: The Defendant's intent was strongly corroborated by his taking a substantial step toward committing the crime.

(Cr. Doc. #212, pp. 24, 26.)

The cases cited by petitioner in his Response do not address attempted bank robbery. (Cv. Doc. #10, pp. 10-11.) Indeed, neither the Eleventh Circuit nor the Supreme Court has decided that "attempted robbery under § 2113(a) requires proof of force and violence or intimidation, rather than just an attempt to engage

in an act of intimidation." <u>Brown v. United States</u>, 533 F. App'x
881, 884 (11th Cir. 2013). Petitioner is therefore in a similar
position to the petitioner in <u>Brown</u>:

> As applied here, Brown did not establish
> <u>Strickland</u> prejudice concerning his guilt
> because he did not meet his burden of proving
> that there was a reasonable probability that
> the district court would have upheld any
> objection or argument on whether attempted
> robbery under § 2113(a) requires proof of
> force and violence or intimidation. Indeed,
> there is a lack of controlling authority on
> the issue, and the majority of circuits that
> have addressed the issue have not decided the
> issue in Brown's favor. While a favorable
> decision on the issue would likely have
> precluded the jury from finding him guilty on
> the § 2113(a) count, as the government did not
> present any evidence that Brown actually used
> force and violence or intimidation, Brown's
> argument amounts to mere speculation that the
> district court would have resolved the issue
> favorably to him, and that is insufficient to
> establish prejudice. See <u>Strickland</u>, 466 U.S.
> at 694, 104 S. Ct. 2052.

<u>Brown</u>, 533 F. App'x at 884. Petitioner has not shown there was a
reasonable probability that the district court would have upheld
any objection or argument that attempted robbery under § 2113(a)
required proof of force and violence or intimidation, or that the
Eleventh Circuit would have so held on direct appeal.

Additionally, raising this issue on direct appeal would not
have accomplished anything for petitioner. The sentences imposed
on each of these three counts were imposed to run concurrently
with five other sentences which would not have been affected by

- 36 -

the issue.  (Cr. Doc. #254, p.3.)  Even if the issue had been raised, and succeeded, petitioner's sentence would have remained the same.

The Court finds that the failure of appellate counsel to raise this issue on direct appeal did not constitute deficient performance and did not prejudice petitioner.

### (2)  Failure to Prove FDIC Insurance

Petitioner argues that the government failed to present evidence that the banks were FDIC insured, which requires a new trial.  Petitioner admits that he stipulated with the government that the financial institutions were FDIC insured, but asserts that the government must present facts in addition to the stipulated facts to prove this element.  Petitioner asserts his appellate attorney should have raised this issue on direct appeal, but failed to do so.  (Cv. Doc. #2, pp. 17-18; Cv. Doc. #10, p. 11.)

The government, all defendants, and all defense counsel signed stipulations as to the insured status of the financial institutions at the relevant times:

- Exhibit 14 was a stipulation that Lee County Postal Employees Credit Union was a FDIC insured financial institution.  (Cr. Doc. #295, p. 779.)

- Exhibit 18 was a stipulation that Wells Fargo Bank was a FDIC insured financial institution. (Id., pp. 162-163.)

- Exhibit 33 was a stipulation that Preferred Community Bank was a FDIC insured financial institution. (Cr. Doc. #296, pp. 276-277.)

- Exhibit 91C was a stipulation that Capital Bank was a FDIC insured financial institution. (Cr. Doc. #300, p. 109.)

- Exhibit 100C was a stipulation that Fifth Third Bank was a FDIC insured financial institution. (Id., pp. 220-221.)

These stipulations constituted evidence that the banks and credit union were FDIC insured, and as the Court instructed, there was "no need for evidence by either side on that point." (Cr. Doc. #212, p. 8.) As stated in Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez, 561 U.S. 661, 677–78 (2010):

> Litigants . . . "are entitled to have their case tried upon the assumption that . . . facts, stipulated into the record, were established." . . . "This Court has accordingly refused to consider a party's argument that contradicted a joint "stipulation entered at the outset of the litigation." . . . But factual stipulations are "formal concessions . . . that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of

> the fact. Thus, a judicial admission . . . is
> conclusive in the case. [ ]

(citations omitted).

Appellate counsel would have raised a frivolous issue on direct appeal if he had made the argument petitioner now asserts was required. Since counsel is not required to raise frivolous issues, petitioner has not established ineffective assistance of counsel.

The Court finds that the failure of appellate counsel to raise the FDIC issue on direct appeal did not constitute deficient performance and did not prejudice petitioner.

**(3) Search Warrant For Cell Phone**

Petitioner argues that there has been an intervening change in the law, holding that the police need a warrant to search a cellular telephone found incident to a lawful arrest. See Riley v. California, 573 U.S. 373 (2014). Petitioner asserts that when he was arrested officers seized his cell phone from his vehicle and searched the phone without a warrant. Petitioner argues that his attorney should have briefed this issue on direct appeal. (Cv. Doc. #2, pp. 18-19; Cv. Doc. #10, pp. 12.)

Riley was decided after petitioner filed his Notice of Appeal (Cr. Doc. # 256) on May 1, 2013, but before the December 18, 2015 decision by the Eleventh Circuit (Cr. Doc. #328). Riley held that generally the police may not search digital information on a

cellphone seized from an arrested individual without a warrant. _Riley_, 573 U.S. at 386. The Supreme Court did not state explicitly that the case was retroactively applicable to cases on collateral review, _Riley_, 573 U.S. at 386, and some decisions have held it is not. _Young v. Pfeiffer_, 933 F.3d 1123, 1125 (9th Cir. 2019); _In re Baker_, 18-15095-C, 2019 WL 3822305, at *1 (11th Cir. Jan. 9, 2019).

The Court assumes, for the sake of argument, that _Riley_ can be raised for the first time in a § 2255 motion. During the trial, Special Agent James Roncinske testified that Special Agent John Kuchta obtained search warrants for two residences and four vehicles for execution on October 7-8, 2011. (Cr. Doc. #301, pp. 25-26, 38.) Petitioner was arrested outside his residence at 2853 Lincoln Boulevard, one of the residences for which there was a search warrant. (_Id._ at 32.) Petitioner's cell phone, Government's Exhibit 123, was seized from his 2006 Nissan pursuant to a search warrant, and given by Special Agent Roncinske to agent Karen Cooper, who submitted it to her laboratory. (_Id._ at 88-89.) The contents of the cell phone were later examined pursuant to two search warrants, which are contained in Case Nos. 2:11-mj-1148-SPC and 2:12-mj-1146-SPC, and the pertinent results were testified to by Connie Bell (Cr. Doc. #302) at trial. Because the contents of the cell phone were examined pursuant to a search

warrant, there was no violation of the principles later announced in _Riley_.

The Court finds that the failure of appellate counsel to raise on direct appeal the lack of a search warrant to search petitioner's cell phones did not constitute deficient performance and did not prejudice petitioner.

### E. Substantive Claim: Counts Four, Six and Eight

Petitioner makes one substantive argument not tied to any assertion of ineffective assistance of counsel. Petitioner was convicted in Counts Four, Six, and Eight of carrying and possessing a firearm in furtherance of a bank robbery, in violation of 18 U.S.C. § 924(c)(1). In Ground Eleven, and in subsequent motions, petitioner argues these convictions should be vacated because the underlying bank robbery offenses are not "crimes of violence" as required by § 924(c)(1). Petitioner relies upon _Johnson v. United States_, 135 S. Ct. 2551 (2015), _Dimaya v. Session_, 138 S. Ct., 584 U.S. ___ (2018), _United States v. Davis_, 139 S. Ct. 2319 (2019), and other cases addressing the definition of "crime of violence" or "violent felony." (Cv. Doc. #2, pp. 19-22; Cv. Docs. #19; #35, #36.)

The issue is whether, applying a categorical approach, bank robbery is a crime of violence within the meaning of § 924(c)(1). The Eleventh Circuit has held that it is. _In re Hines_, 824 F.3d 1334, 1337 (11th Cir. 2016). _See also_ _In re Sams_, 830 F.3d 1234,

1239 (11th Cir. 2016) ("a bank robbery conviction under § 2113(a) by force and violence or by intimidation qualifies as a crime of violence under the § 924(c)(3)(A) use-of-force clause"). Robberies under various statutes have been held to be crimes of violence or violent felonies.  <u>See</u> <u>also</u> <u>United States v. Harvey</u>, 18-13108, ___ F. App'x ___, 2020 WL 398516, at *1 (11th Cir. Jan. 23, 2020)(attempted bank robbery is a crime of violence under § 924(c)(3)'s elements clause); <u>United States v. Hanks</u>, 18-14183, 2020 WL 132736, at *2 (11th Cir. Jan. 13, 2020); <u>United States v. St. Hubert</u>, 909 F.3d 335, 345-51 (11th Cir. 2018)(Hobbs Act robbery and attempted Hobbs Act robbery qualify as crimes of violence under the elements clause of § 924(c), abrogated on other grounds by <u>Davis</u>, 139 S. Ct. 2319); <u>United States v. Fritts</u>, 841 F.3d 937, 942-44 (11th Cir. 2016)(Florida armed robbery is categorically a violent felony under the ACCA's elements clause). <u>United States v. Joyner</u>, 882 F.3d 1369, 1378-79 (11th Cir. 2018) (Florida attempted robbery is categorically a violent felony under the ACCA's elements clause).  Petitioner is not entitled to relief under Ground Eleven, and petitioner's motion is denied.

**F. Evidentiary Hearing Standard**

A district court shall hold an evidentiary hearing on a habeas corpus petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255(b).  To establish entitlement to an

evidentiary hearing, petitioner must "allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance." <u>Hernandez v. United States</u>, 778 F.3d 1230, 1232-33 (11th Cir. 2015). The Court finds that the record establishes that Petitioner is not entitled to relief and, therefore, an evidentiary hearing is not required.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  Petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #331) is **DENIED.**

2.  The Clerk of the Court shall enter judgment accordingly and close the civil file. The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

3.  The Clerk shall provide copies of the two search warrants executed in Case Nos. 2:11-mj-1148-SPC and 2:12-mj-1146-SPC to petitioner with the Opinion and Order and make a notation that copies were sent.

4.  Petitioner's Motion to Grant Harrell Relief in Light of Dimaya v Session (Cv. Doc. #19) is **DENIED.**

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.** A prisoner seeking a writ of habeas

corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1); <u>Harbison v. Bell</u>, 556 U.S. 180, 183 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003)(citations omitted). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this  <u> 10th </u>  day of February, 2020.

<br>

                                         _____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Petitioner
AUSA